[Cite as *S. Euclid v. Whitledge*, 2014-Ohio-2405.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100543

---

## CITY OF SOUTH EUCLID

PLAINTIFF-APPELLEE

vs.

## JON K. WHITLEDGE

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
South Euclid Municipal Court
Case No. TRD 1300994

BEFORE: Rocco, P.J., Keough, J., and E.A. Gallagher, J.

RELEASED AND JOURNALIZED: June 5, 2014

-i-

**ATTORNEY FOR APPELLANT**

Joseph T. McGinness
5005 Rockside Road
Suite 600
Cleveland, OH   44131

**ATTORNEYS FOR APPELLEE**

Michael P. Lograsso
Law Director, South Euclid
By:   Michael Shaughnessy
        City Prosecutor
1349 South Green Road
South Euclid, OH 44121

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Jon K. Whitledge appeals from his conviction in the South Euclid Municipal Court for violating South Euclid Municipal Code ("SEMC") 331.34(c), failure to give full time and attention while operating a vehicle ("full time and attention").

{¶2} Whitledge presents one assignment of error. He asserts that the municipal court should have granted his motion for a "directed verdict" in his favor and dismissed the city's case against him. In essence, Whitledge argues that he should be excused for causing an accident because the city failed to post signs warning him about the construction zone where the accident occurred.

{¶3} A review of the record, however, supports the municipal court's decision. Consequently, Whitledge's assignment of error is overruled, and his conviction is affirmed.

{¶4} Whitledge's conviction resulted from an incident that occurred at approximately 7:45 a.m. on April 2, 2013. Whitledge was traveling southbound at that time on Trebisky Road; he was approaching traffic lights marking the intersection of Monticello Boulevard.

{¶5} Construction vehicles occupied the northbound side of Trebisky Road. In order to permit two lanes of traffic, one northbound and one southbound, therefore, the construction workers had set up orange traffic cones. The traffic cones blocked the

southbound turning lane for traffic seeking to proceed eastbound onto Monticello; instead, the cones directed northbound traffic into this lane and provided only a single lane for southbound traffic.

{¶6} Whitledge failed to notice that the lanes for Trebisky Road had been narrowed. He entered the eastbound turning lane without heeding the traffic cones. When he saw that he was in the path of oncoming traffic, he swerved back into the single southbound lane of travel.

{¶7} By the time Whitledge made his correction, however, another southbound car, operated by Suchi Tirunagari, was already in the process of proceeding past him toward the intersection. As a result, the front passenger side of Whitledge's car collided into the driver's side door of Tirunagari's car.

{¶8} After the collision, Whitledge and Tirunagari drove their cars into a nearby driveway and awaited the arrival of the police. Officer Chris Khoenle responded to the scene. He took photos of the damage to the two cars and created an accident report. Khoenle also cited Whitledge for violating SEMC 331.34(c), full time and attention.

{¶9} Whitledge pleaded not guilty to the charge. After a bench trial, however, the municipal court found Whitledge guilty. The court imposed a fine for Whitledge's conviction, but stayed execution of the sentence pending the outcome of this appeal.

{¶10} Whitledge presents the following as his sole assignment of error.

I.   The trial court erred when it denied the defendant's motion for directed verdict notwithstanding the undisputed fact that there were no official signs posted in the construction zone as required by law.

**{¶11}** In his assignment of error, Whitledge does not specifically challenge the sufficiency of the evidence to support his conviction.   Whitledge argues instead that the municipal court should have granted his motion for acquittal of the charge of full time and attention because, at the time of the accident, no signs were in place to direct him into the correct lane of travel.   He bases his argument on the premise that the city's failure to comply with the Temporary Traffic Control portion of the Ohio Uniform Manual for Traffic Control Devices (the "TTC Manual") mandates dismissal of the city's case against him.   This court does not agree with Whitledge's premise.

**{¶12}** SEMC 331.34(c) states in pertinent part: "No person shall operate a vehicle without giving his or her full time and attention to the operation of such vehicle."

**{¶13}** In *Cleveland v. English*, 8th Dist. Cuyahoga No. 92591, 2009-Ohio-5011, ¶ 15-17, this court made the following observations:

> This court held in *Seven Hills v. Gossick* (Nov. 15, 1988), Cuyahoga App. No. 48088 that this offense is a "*specific instance* of failure to control" a vehicle. The offense may be established by proof that the offender's "driving behavior" was either erratic or *posed a danger to persons or property*. *Cleveland v. Isaacs* (1993), 91 Ohio App.3d 360, 632 N.E.2d 928; *Lakewood v. Komaromy*, Cuyahoga App. No. 80258, 2002-Ohio-4076, P18-23.

> Thus, in *State v. Roberson* (Oct. 28, 1996), Stark App. No. 1996CA00001, 1996 Ohio App. LEXIS 6080, the court held that "the offense * * * does not require, as an element * * *, that the offender actually be involved in an accident * * * . It is *the*

*reckless manner in which the driver operates his vehicle that establishes a violation* of this offense * * * ." The "ordinary standard of negligence" provides "the requisite proof of culpability within * * * [the] ordinance." *State v. Lett*, Ashland App. No. 02COA049, 2002-Ohio-3366, 12, citing *State v. Jones* (Apr. 25, 1989), Franklin App. No. 88AP-920, 1989 Ohio App. LEXIS 1475.

Therefore, in order to overcome a motion for acquittal, the *city need not prove precisely "which of [the defendant's] driving actions caused him not to give his full time and attention to his driving*." *Komaromy*, supra. Rather, it is *sufficient that the direct or circumstantial evidence*, which is, in turn, *gathered through first or secondhand observation, demonstrates the offender's "full time and attention" was not directed at his driving*. Id.

(Emphasis added.)

{¶14} In light of the indisputable fact in this case that Whitledge's sudden correction out of the lane marked by the traffic cones for northbound travel caused a collision with Tirunagari's car, the city presented sufficient evidence to prove the offense.

{¶15} Whitledge, however, claims that the traffic cones were inadequate to comply with the city's obligations under the TTC Manual. Citing R.C. 4511.12, he asserts that he thus could not be found guilty of the offense. A review of the relevant portions of the TTC Manual, however, does not support his claim.

{¶16} Part 6 of the Manual sets forth the relevant guidelines for TTC situations. Section 6A.01 states the "general" provisions, and provides at ¶ 7 as follows:

No one set of TTC devices can satisfy all conditions for a given project or incident.  At the same time, defining details that would be adequate to cover all applications is not practical.  Instead, Part 6 displays typical applications that depict common applications of TTC devices.  The TTC selected for each situation depends on the type of highway, road user conditions, duration of operation, physical constraints, and the nearness of work space
   * * * to road users.

**{¶17}** The "standard" of this section is set forth at ¶ 10 as follows:

TTC plans and devices shall be the responsibility of the authority of a public body or official having jurisdiction for guiding road users.  There shall be adequate statutory authority for the implementation and enforcement of needed road user regulations * * * .  Such statutes shall provide sufficient flexibility in the application of TTC to meet the needs of changing conditions in the TTC zone.

**{¶18}** SEMC 301.46 states in pertinent part:

"Traffic control device" means a flagger, sign, signal, marking, *or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street,* highway, private road open to public travel, pedestrian facility, or shared-use path *by authority of a public agency or official having jurisdiction * * * .*

(Emphasis added.)

**{¶19}** Section 6C.10 of the TTC Manual addresses "One-Lane, Two-Way Traffic Control," and permits the following "option" at ¶ 5:

If the work space on a low-volume street or road is short and road users from both directions are able to see the traffic approaching from the opposite direction through and beyond the worksite, the movement of traffic through a one-lane, two-way constriction may be self-regulating.

**{¶20}** In addition, Sections 6F.63 through 6F.65 permit the use of "channelizing devices." The permitted designs of such devices are shown in the TTC Manual's Figure 6F-7. For short-term daytime work on roadways with a speed limit of less than 40 miles per hour, the TTC Manual allows the use of either orange "tubular markers" or cones that are 18 inches in height as "channelizing devices." Signage is not mandatory in such situations. Indeed, Section 6F.65 of the TTC Manual states in pertinent part at ¶ 6 that "[t]ubular markers may be used effectively to divide opposing lanes of road users * * * ."

The evidence admitted at Whitledge's trial proved that the South Euclid city workers complied with their duties under SEMC 301.46 and the TTC Manual on the morning of the incident. *Compare Bellefontaine v. Reinman*, 3d Dist. Logan No. 8-04-13, 2004-Ohio-4806 (city failed to post required sign when construction work was not temporary). The city workers set up self-regulating traffic cones to guide drivers into Trebisky Road's temporary lanes. Drivers who paid ordinary attention to the road conditions had no difficulty understanding the meaning of the permitted traffic devices; Whitledge presented no evidence that any other accidents occurred at the location.

**{¶21}** The municipal court, therefore, correctly denied Whitledge's motion for acquittal of the charge. *Lakewood v. Komaromy*, 8th Dist. Cuyahoga No. 80258, 2002-Ohio-4076; *compare Cleveland v. Ismail*, 8th Dist. Cuyahoga No. 100179, 2014-Ohio-1080. Accordingly, his assignment of error is overruled.

**{¶22}** Whitledge's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the South Euclid Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN A. GALLAGHER, J., CONCUR